**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Jose Hernandez** | * | |
| **813 Quince Orchard Boulevard** | | |
| **Gaithersburg, Maryland 20878** | * | |
| | | |
| **Oscar Flores** | * | |
| **10416 Glenmore Drive** | | |
| **Hyattsville, Maryland 20783** | * | |
| | | |
| **Marvin Marquez** | * | Case No. _____ |
| **8210 Roanoke Avenue #303** | | **JURY TRIAL REQUESTED** |
| **Takoma Park, Maryland 20913** | * | |
| | | |
| **Roberto Valladares** | * | |
| **4406 Josephine Ave** | | |
| **Beltsville, Maryland 20705** | * | |
| | | |
| **Jendrick Ayala** | * | |
| **5209 Aldershot Drive** | | |
| **Lanham, Maryland 20706** | * | |
| | | |
| **Luis Mendez** | * | |
| **10505 Woodleigh Court** | | |
| **Beltsville, Maryland 20705** | * | |
| | | |
| **Oscar Esquivel Rivera** | * | |
| **6001 Logan Way Apartment C-5** | | |
| **Bladensburg, Maryland 20710** | * | |
| | | |
| **Jeffrey Gochez** | * | |
| **5805 63rd Place** | | |
| **Riverdale, Maryland 20737** | * | |
| | | |
| **DeMonte Martin** | * | |
| **8401 Rhode Island Avenue** | | |
| **College Park, Maryland 20740** | * | |
| | | |
| **Remberto Argueta** | * | |
| **1902 Erie Street, Apt. 204** | | |
| **Hyattsville, Maryland 20783** | * | |
| | | |
| **Plaintiffs** | * | |

v.                                          *

**Microfit Auto Parts, Inc.**               *
**SERVE ON:  Inder S. Bian**
**6013 Riggs Road**                         *
**Laytonsville, Maryland 20882**
                                            *

**Inder S. Bian**
**6013 Riggs Road**                         *
**Laytonsville, Maryland 20882**
                                            *

**Kamaljit K. Bian**
**6013 Riggs Road**                         *
**Laytonsville, Maryland 20882**
                                            *

**Shanthan Reddy**
**6013 Riggs Road**                         *
**Laytonsville, Maryland 20882**
                                            *

       **Defendants.**
_____/

## COMPLAINT

Plaintiffs, Messrs. Jose Hernandez, Remberto Argueta, Oscar Flores, Marvin Marquez, Roberto Valladares, Jendrick Ayala, Luis Mendez, Oscar Esquivel Rivera, Jeffrey Gochez, and DeMonte Martin, by and through their undersigned counsel, state a complaint against Defendants Microfit Auto Parts, Inc., Inder S. Bian, Kamaljit K. Bian, and Shanthan Reddy pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and supplemental state law claims under the Maryland's Wage and Hour Law, Md. Code Ann., LE Art. § 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 *et seq*. ("MWPCL"), and demand a jury trial, as follows:

**Introduction**

1.      This is an action for unpaid wages, damages, and relief provided by the FLSA, 29 U.S.C.

§ 201 *et seq*., the MWHL, Md. Code Ann., LE Art. § 3-401 *et seq.*, and the MWPCL, Md. Code

Ann., LE Art. § 3-501 *et seq.*

2.      Plaintiffs seek actual sums owed in unpaid minimum wages, overtime wages, and lost

wages, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL,

commissions earned and underpaid under the MWPCL, and attorneys' fees and costs as provided

under the under the FLSA, MWHL, and MWCPL.  Plaintiff Mendez seeks additional damages

relating to retaliation, as described below, to include compensatory damages involving emotional

distress as well as punitive damages.

**Jurisdiction and Venue**

3.      This Court has subject matter/original jurisdiction over this action pursuant to 29 U.S.C. §

206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over the MWHL and MWPCL claims, which

include unpaid minimum wage, overtime and commission payments, pursuant to 28 U.S.C. §

1367(a) because said claims are so related to the FLSA claims that they form part of the same case

or controversy.

5.      Venue and personal jurisdiction are proper pursuant to 28 U.S.C. § 1391(b), because

Defendants do business within this judicial district and the events and omissions giving rise to the

claims in this Complaint occurred in this judicial district.

## Parties

6.      Defendant Microfit Auto Parts, Inc. is a corporation formed in the State of Maryland by the Defendants to engage in the sale and delivery of auto parts through the District of Columbia, Maryland, and Virginia area ("DMV").  Defendant Microfit Auto Parts, Inc. does business at 10726 Tucker Street, Beltsville, Maryland 20705.

7.      At all times material herein, Defendant Microfit Auto Parts, Inc. had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.  Plaintiffs know this because they and others have delivered a substantial number of auto parts throughout the DMV.

8.      Defendant, Microfit Auto Parts, Inc. employs at least two or more employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.  For instance, there are employees of Defendant who order auto parts from producers and suppliers who operate in interstate commerce.  There are employees who stock these auto parts.  There are also employees, like the Plaintiffs, who deliver auto parts in small box trucks weighing less than 10,000 pounds, that cross interstate and even international boundaries.  Accordingly, subject matter jurisdiction exists because Plaintiffs are employed by Defendant Microfit Auto Parts, Inc., a covered entity, satisfying the enterprise coverage provisions under the FLSA.  Defendant Microfit Auto Parts, Inc. also satisfies the coverage provisions of the MWHL.  As a covered enterprise, Defendant Microfit Auto Parts, Inc. has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

9.      Defendants Inder S. Bian, who upon information and belief goes by the name of "Mike," and Kamaljit K. Bian (collectively referred to herein as the "Bian Defendants") are husband and wife owners of Defendant Microfit Auto Parts, Inc., with complete operational control of Microfit

Auto Parts.  Upon information and belief, the Bian Defendants maintain joint custody and control of Microfit Auto Part's business records and shares responsibility with one another for maintaining those records, such as payroll records.  Additionally, upon information and belief, for all times material to this case, the Bian Defendants were, and continue to be, aware of operational issues throughout the business, and are knowledgeable of Microfit Auto Parts' past and present employment practices and policies and the schedule worked by the drivers (such as the Plaintiffs) and the compensation paid to the drivers.  Upon information and belief, for all times material to this case, the Bian Defendants possessed and continue to possess the authority and discretion to fix, adjust and determine hours worked and amounts paid with respect to employees at Microfit Auto Parts, including Plaintiffs, and possessed the ability to hire employees and both Bian Defendants have terminated employees.  Upon information and belief, the Bian Defendants receive and continue to receive income from Defendant Microfit Auto Parts and have been enriched by the failure of the Defendants to properly pay their workers.  At all times material herein, the Bian Defendants have been (together and separately) an "employer" within the meaning of the FLSA, MWHL, and MWPCL.  The Bian Defendants are thus jointly and individually liable for damages to Plaintiffs arising under the FLSA, MWHL, and MWPCL.

10.     Defendant Shanthan Reddy ("Defendant Reddy") is a manager at Defendant Microfit Auto Parts, Inc.  Upon information and belief, and for all times pertinent to this case, Defendant Reddy was and currently involved in and responsible for, informing employees of Microfit Auto Parts, Inc.'s employment policies and practices; scheduling employee work hours/shifts; supervising and conducting payroll operations, including distribution of cash and paychecks to employees; assignment of work tasks and job positions; and setting and supervising employee clock-in and clock-out requirements and practices.  Additionally, upon information and belief, for all times

material to this case, Defendant Reddy possessed and continue to possess authority to hire and fire Microft Auto Parts, Inc.'s employees. At all times material herein, Defendant Reddy has been an "employer" within the meaning of the FLSA and MWHL. Defendant Reddy is jointly and individually liable for damages to Plaintiffs arising under the FLSA and MWHL.

11.      As set forth below, Plaintiffs seek unpaid minimum wages and unpaid overtime wages, in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

12.      Additionally, Plaintiff Mendez seeks lost wages, emotional distress damages, and injunctive relief against retaliatory behavior by Defendants, as well as liquidated damages, pursuant to the FLSA.

13.      Finally, Plaintiffs seek unpaid commissions promised and owed to them, in amounts to be determined based on the evidence, as well as statutory damages, pursuant to the MWPCL, and attorneys' fees and costs as provided under the MWCPL.

14.      Plaintiffs were not exempt under the MWHL and FLSA's minimum wage and overtime requirements.

15.      By failing to pay the statutory minimum wage that was due to Plaintiffs, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA. Plaintiffs further allege that the Defendants violated the minimum wage provisions of the MWHL. Additionally, by failing to pay overtime to Plaintiffs, Defendants willfully violated very clear and well-established overtime provisions under the FLSA and the MWHL. Finally, by engaging in retaliatory behavior against Plaintiff Mendez, who is currently employed, Plaintiffs further allege that the Defendants violated the anti-retaliation provisions of the FLSA. In addition to actual sums

owed, Plaintiffs seek liquidated (statutory) damages pursuant to the FLSA, pre-judgment interest on all amounts owed under the MWHL, three times the minimum wages and overtime owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, the MWHL and MWPCL.

**Common Factual Allegations**

16.     Each of the Plaintiffs were employees at Microfit.

17.     Each of the Plaintiffs were employed in a non-exempt position.

18.     Each of the Plaintiffs were employed by Defendants within the last three years.

19.     All of the Plaintiffs were assigned and worked a set schedule that was approximately nine (9) hours Monday through Friday, and six (6) hours on Saturday.

20.     However, it was common for Plaintiffs to run over these times due to traffic, delivery requirements, business conditions, and other constraints, and therefore Plaintiffs routinely exceeded the stated hours.

21.     Due to the press of deliveries and pace of business, Plaintiffs were unable to take breaks where they were fully relieved of their work for 20 minutes or more, or lunch breaks of 30 minutes or more.

22.     Additionally, each of the Plaintiffs were promised a commission based on a percentage of the value of goods delivered by them over the course of a month.

23.     Upon information and belief, Defendants have failed to pay the commission promised to the Plaintiffs.

24.     Defendants have refused, on numerous occasions when questioned by certain Plaintiffs who worked as delivery drivers, to provide any support for the basis for the commissions.

25.     Plaintiffs were never given accurate accountings from which their commissions were

calculated.

26.     Additionally, Defendants repeatedly and consistently made deductions from Plaintiffs wages for a variety of reasons for which Plaintiffs could not control and were contrary to promises made to the Plaintiffs.

27.     These deductions further reduced the weekly wage Plaintiffs' received from the Defendants, resulting in Plaintiffs and other drivers not receiving at least their minimum wage.

## Individualized Factual Allegations

### Jose Hernandez

28.     Plaintiff Hernandez was employed by Microfit from February 2015 to the late summer of 2016.

29.     Plaintiff Hernandez started at Microfit as a warehouse laborer but transitioned to an inside sales person in September of 2015.

30.     Although Plaintiff Hernandez was employed as an inside sales person from September 2015 onwards, he would still work the warehouse if his inside sales work was slow.  This would result him in working the warehouse about twice a week.

31.     In addition to working as an inside sales person and warehouse laborer, Plaintiff Hernandez would spend approximately three nights a week, after his regular duties, cleaning up the delivery routes for the next morning.

32.     Plaintiff Hernandez was scheduled by Defendants to work from 8:00 am to 5:30 pm, Monday through Friday, and 8:00 am to 2:30 pm on Saturdays.

33.     Plaintiff Hernandez's hours often ran from 8:00 am to 6:00 pm, Monday through Friday.

34.     If Plaintiff Hernandez was cleaning up the delivery routes after his regular duties, his hours would run from 8:00 am to 9:00 pm.

35.     Plaintiff Hernandez worked at a weekly rate of $425/hour plus an additional $40 to $60 dollars if he was cleaning up delivery routes at night.

36.     Plaintiff Hernandez regularly worked in excess of forty (40) hours a week but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

37.     Regardless of whether Plaintiff Hernandez worked in excess of forty (40) hours or not, in many workweeks, Plaintiff Hernandez's $425/week weekly rate did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

38.     Plaintiff Hernandez was also promised a commission based on the value of the good he sold or delivered.

39.     Plaintiff Hernandez was promised that if he sold more than $40,000 worth of goods in a month, then he would receive a 1% commission on the goods sold.

40.     He was also promised that if he sold more than $40,000 worth of goods in a month, and his profit margins exceeded 32%, he would then receive a 1.5% commission on the goods sold.

41.     Plaintiff Hernandez delivered as much as $65,000 worth of goods per month.

42.     However, Plaintiff Hernandez only received around $400/month in commission, never receiving more than $600/month.

43.     Defendants have thus failed to pay Plaintiff Hernandez the commission that was promised to him.

44.     As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Hernandez's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

Remberto Argueta

45.     Plaintiff Argueta was employed by Microfit from 2011 to July 2017.

46.     Plaintiff Argueta worked as a driver.

47.     Plaintiff Argueta was scheduled by Defendants to work from 7:00 am to 3:00 pm, Monday through Friday.  Plaintiff Argueta was also scheduled to work Saturdays starting at 8:00 am, but no official end time was scheduled for him.

48.     Plaintiff Argueta's hours often ran from 7:00 am to 8:00 pm, Monday through Friday, and would sometimes even run to 9:00 pm.

49.     On Saturdays, his hours often ran from 8:00 am to 6:00 pm.

50.     Plaintiff Argueta worked at a weekly rate of $450/hour.

51.     Plaintiff Argueta regularly worked in excess of forty (40) hours a week but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

52.     Because Plaintiff Argueta worked in excess of forty (40) hours in many workweeks, Plaintiff Hernandez's $450/week weekly rate did not equate to an hourly rate of pay that equaled or exceeded the minimum wage.

53.     Plaintiff Argueta was also promised a commission based on the value of the good he sold or delivered.

54.     Plaintiff Argueta was promised that he would receive a 1.5% commission on the goods sold.

55.     Plaintiff Argueta delivered as much as $90,000 worth of goods per month.

56.     However, Plaintiff Argueta only received around $400/month in commission, never receiving more than $600/month.

57.     Additionally, Plaintiff Argueta was never paid his final commission check worth about $600.

58.     Plaintiff Argueta was also repeatedly subject to deductions by Defendants for events outside his control.

59.     For example, Defendants deducted from Plaintiff Argueta's commissions for missing parts, broken parts, parts returned by customers, and any collections issues that would arise with customers.

60.     These deductions resulted in approximately $400 being deducted out of Plaintiff Argueta's wages per month.

61.     Defendants have thus failed to pay Plaintiff Argueta the commission that was promised to him.

62.     As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Argueta's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

63.     Defendants have willfully violated Plaintiff Argueta's FLSA rights by not including him on a list of drivers, previously ordered by this Court to be produced by Defendants in *Dominguez et al. v. Microfit Auto Parts, Inc.*, CBD 18-534 (ECF Doc. 24).

<u>Jendrick Ayala</u>

64.     Plaintiff Ayala was employed as an inside sales person from March 2016 to early 2017, and from July 2018 to December 2018.

65.     During his first period of employment with Defendants from March 2016 to early 2017, Plaintiff Ayala was scheduled by Defendants to work from 8:00 am to 5:30 pm, Monday through Friday, and 9:00 am to 2:30 pm on Saturdays.

66.     During his second period of employment with Defendants from July 2018 to December 2018, Plaintiff Ayala was scheduled by Defendants to work from 9:00 am to 5:00 pm Monday through Friday and no longer worked Saturdays.

67.     Plaintiff Ayala worked at a weekly rate of $350/week during his first period of employment from 2016 to 2017.

68.     Plaintiff Ayala worked at an hourly rate of $11.50/hour during his second period of employment in 2018.

69.     During his employment in 2018, Plaintiff Ayala clocked in and out via a time clock machine.  Defendants, however, would manually subtract 30 minutes from his time for lunches that Defendants knew, or should have known, he did not take.

70.     Plaintiff Ayala regularly worked in excess of forty (40) hours a week but was never paid overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

71.     Regardless of whether Plaintiff Ayala worked in excess of forty (40) hours or not, during his 2016 to 2017 period of employment, Plaintiff Ayala's $350/week weekly wage did not equal or exceed the minimum wage.

72.     Plaintiff Ayala was also promised a commission based on the value of the good he sold.

73.     During his 2016 to 2017 period of employment, Plaintiff Ayala was promised that he would receive a 1% commission on the goods sold.

74.     During his 2018 period of employment, Plaintiff Ayala was promised that he would receive a 1% commission on the goods sold, but that the Defendants would take 20% of the commission earned to offset the fact he was now being paid on an hourly basis.

75.     Plaintiff Ayala delivered on average $38,000 worth of goods per month.

76.     However, Plaintiff Ayala only received around $350/month in commission, which was further reduced by 20% during his 2018 period of employment.

77.     Additionally, Plaintiff Ayala was never paid his final commission check.

78.     Defendants have thus failed to pay Plaintiff Ayala the commission that was promised to him.

79.     As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Ayala's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

<u>Oscar Esquivel Rivera</u>

80.     Plaintiff Rivera was employed as a delivery driver from the Autumn of 2011 till September 2016.

81.     Plaintiff Rivera was scheduled by Defendants to work from 8:00 am to 5:00 pm, Monday through Friday, and from 8:00 am to 2:00 pm on Saturdays.

82.     Plaintiff Rivera's hours often ran from 8:00 am to 7:00 pm, Monday through Friday, and 8:00 am to 7:00 pm on Saturdays.

83.     Plaintiff Rivera worked at a weekly rate of $300/week, which was raised to $475/week in 2014.

84.     Plaintiff Rivera regularly worked in excess of forty (40) hours a week but was never paid any overtime for the excess hours at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

85.     Regardless of whether Plaintiff Rivera worked in excess of forty (40) hours or not, Plaintiff Rivera's weekly wages did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

86.     Plaintiff Rivera was also promised a commission based on the value of the goods he delivered but was never told exactly how it was calculated.

87.     Upon information and belief, Plaintiff Rivera was owed a commission equivalent to approximately 1% of the value of the goods delivered per month.

88.     Plaintiff Rivera delivered on average $60,000 to $70,000 worth of goods per month.

89.     Plaintiff Rivera only received around $300 to $400 per month in commission.

90.     Additionally, Plaintiff Rivera was repeatedly subject to deductions by Defendants for events outside his control.

91.     For example, Defendants deducted from Plaintiff Rivera's commissions for parts stolen from his truck and non-payment by customers after Defendants approved Plaintiff Rivera to leave the parts with the customer without first collecting payment.

92.     These deductions resulted in approximately $3,000 being deducted from Plaintiff Rivera's commissions during the course of his employment.

93.     Defendants have thus failed to pay Plaintiff Rivera the commission that was promised to him.

94.     As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Rivera's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

<u>Oscar Flores</u>

95.     Plaintiff Flores was employed as an inside sales person from March 2013 to late summer of 2018.

96.     In addition to working as an inside sales person, Plaintiff Flores would occasionally be required to work as a delivery driver if there were not enough drivers available.

97.     Prior to May of 2018, Plaintiff Flores was scheduled by Defendants to work from 8:00 am to 5:30 pm, Monday through Friday, and from 8:00 am to 2:30 pm on Saturdays.

98.     In May of 2018, Plaintiff Flores was scheduled by Defendants to work from 9:00 am to 5:00 pm, Monday through Friday, and from 9:00 am to 2:00 pm on Saturdays.

99.     Plaintiff Flores' hours often ran from 7:45 am to 6:00 pm, Monday through Friday, and 8:00 am to 5:30 pm on Saturdays.

100.    Plaintiff Flores worked at a weekly rate of $540/week.

101.    Plaintiff Flores regularly worked in excess of forty (40) hours a week but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

102.    Because Plaintiff Flores regularly worked in excess of forty (40) hours a week, his weekly wages of $540/week did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

103.    Plaintiff Flores was also promised a commission of 1.5% based on the value of the goods he sold.

104.    Plaintiff Flores sold on average $70,000 to $90,000 worth of goods per month.

105.    Plaintiff Flores only received around $800 per month in commission.

106.    Additionally, Plaintiff Flores was repeatedly subject to deductions by Defendants for events outside his control.

107.    For example, Defendants deducted from Plaintiff Flores' wages for missing and broken parts.

108.    This resulted from $540 being deducted from his last pay check, and a total of approximately $8,400 being deducted from wages and commissions during the course of his

employment.

109.    Defendants have thus failed to pay Plaintiff Flores the commission that was promised to him.

110.    As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Flores' weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

<u>Jeffrey Gochez</u>

111.    Plaintiff Gochez was employed as a delivery driver from January 2017 to October 2018.

112.    Plaintiff Gochez was scheduled by Defendants to work from 8:00 am to 5:00 pm, Monday through Friday, and from 8:00 am to 2:00 pm on Saturdays.

113     In January of 2018, Plaintiff Gochez was no longer scheduled to work Saturdays, but was still scheduled to work Monday through Friday from 8:00 am to 2:00 pm.

114.    Plaintiff Gochez's hours often ran from 8:00 am to 7:30 pm, Monday through Friday, and 8:00 am to 6:00 pm on Saturdays.

115.    Plaintiff Gochez worked at a weekly rate of $500/week until February 2018.

116.    Beginning in February of 2018, Plaintiff Gochez was paid at an hourly rate of $10.50/hour.

117.    Plaintiff Gochez regularly worked in excess of forty (40) hours a week, but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

118.    Because Plaintiff Gochez routinely worked in excess of forty (40) hours per work week, Plaintiff Gochez's weekly wages of $500/week did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

119.    Beginning in early 2018, Defendants began requiring workers to clock themselves in and out via a time clock machine.

120.    Plaintiff Gochez, who kept his own record of his hours, noticed on at least one occasion in March of 2018, that although he had worked fifty-two (52) hours that week, his paycheck reflected that he had only worked forty (40) hours.

121.    When Plaintiff Gochez brought this to Defendants' attention, they dismissed his concerns and told him that he shouldn't be tracking his hours on his own.

122.    Plaintiff Gochez was also promised a commission of 1% based on the value of the goods he delivered.

123.    Plaintiff Gochez delivered on average $80,000 to $95,000 worth of goods per month.

124.    Plaintiff Gochez only received around $350 per month in commission.

125.    Additionally, Plaintiff Gochez was subject to deductions by Defendants for events outside his control.

126.    For example, Defendants deducted from Plaintiff Gochez's commissions for returned parts and for not having enough cash on hand for purchases.  Moreover, these deductions were made at the customer prices rather than manufacturer's price.

127.    This resulted in approximately $200 being deducted from his commissions.

128.    Defendants have thus failed to pay Plaintiff Gochez the commission that was promised to him.

129.    As a result of these deductions, and the failure to pay commissions earned, Plaintiff Gochez's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

<u>Marvin Marquez</u>

130.    Plaintiff Marquez was employed as an inside sales person for Defendants from May 2016 to October 2017.

131.    Plaintiff Marquez would also work as a delivery driver when the business was short staffed on drivers.  Plaintiff Marquez worked as a delivery driver about half of the time.

132.    Additionally, Plaintiff Marquez had administrative duties prior to the start of his work day as an inside sales person.  These duties included checking on inventory, organizing the delivery routes for the day, double checking paperwork, ensuring customers' shops were open and that delivery drivers were aware of any moneys owed by customers, and checking to ensure the reasons for parts being returned were legitimate.

133.    Plaintiff Marquez was scheduled by Defendants to work from 7:30 am to 5:30 pm, Monday through Friday, and from 7:30 am to 2:30 pm on Saturdays.

134.    If Plaintiff Marquez was delivering, his hours often ran from 7:30 am to 7:00 pm, Monday through Friday, and 7:30 am to 4:00 pm on Saturdays.

135.    If Plaintiff Marquez was working as an inside sales person, his hours often ran from 7:30 am to 6:00 pm, Monday through Friday, and 7:30 am to 3:30 pm on Saturdays.

136.    Plaintiff Marquez worked at a weekly rate of $350/week.

137.    Plaintiff Marquez regularly worked in excess of forty (40) hours a week, but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

138.    Regardless of whether Plaintiff Marquez worked in excess of forty (40) hours or not, Plaintiff Marquez's weekly wages of $350/week did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

139.    Plaintiff Marquez was also promised a commission of 1% based on the value of the goods he delivered.

140.    Plaintiff Marquez delivered on average $15,000 worth of goods per month, and sold $65,000 worth of goods per month.

141.    Plaintiff Marquez only received around $250 per month in commission, and never received more than $400 in a single month.

142.    Additionally, Plaintiff Marquez was subject to deductions by Defendants for events outside his control.

143.    For example, Defendants on multiple occasions, deducted approximately $250 from Plaintiff Marquez's commissions for returned parts.

144.    This resulted in approximately $2000 being deducted from his commissions during the course of his employment with the Defendants.

145.    Defendants have thus failed to pay Plaintiff Marquez the commission that was promised to him.

146.    As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Marquez's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

<u>DeMonte Martin</u>

147.    Plaintiff Martin was employed as a driver for Defendants from May 2016 to August 2016.

148.    Plaintiff Martin also worked as a warehouse laborer three times during his employment with Defendants.

149.    Plaintiff Martin was scheduled by Defendants to work from 7:00 am to 5:00 pm, Monday through Friday, and from 7:00 am to 2:00 pm on Saturdays.

150.   Plaintiff Martin's hours often ran from 7:00 am to 6:30 pm, Monday through Friday, and 7:00 am to 5:00 pm on Saturdays.

151.   Plaintiff Martin worked at a weekly rate of $300/week.

152.   Plaintiff Martin regularly worked in excess of forty (40) hours a week, but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

153.   Regardless of whether Plaintiff Martin worked in excess of forty (40) hours or not, Plaintiff Martin's weekly wages of $300/week did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

154.   Plaintiff Martin was also promised a commission of 1% based on the value of the goods he delivered.

155.   Plaintiff Martin delivered on average at least $10,000 worth of goods per month.

156.   Plaintiff Martin only received around $80 per month in commission, and never received more than $120 in a single month.

157.   Additionally, Plaintiff Martin was subject to deductions by Defendants for events outside his control.

158.   For example, Defendants twice deducted approximately $280 from Plaintiff Martin's commissions for his truck being loaded with the wrong parts, and once for missing parts.

159.   Defendants have thus failed to pay Plaintiff Martin the commission that was promised to him.

160.   As a result of these deductions, and the failure to pay all commissions earned, Plaintiff Martin's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

Luis Mendez

161.   Plaintiff Mendez is currently employed as an inside sales person for Defendants and started working for them around January 2010.

162.   Plaintiff Mendez initially started with Defendants to build racks for car parts in their warehouses but was asked to stay on as a driver.  After three months as a driver, he became an inside sales person.

163.   Prior to February 4th, 2019, Plaintiff Mendez was scheduled by Defendants to work from 8:00 am to 4:00 pm, Monday through Friday, and from 9:00 am to 2:00 pm on Saturdays.

164.   Plaintiff Mendez would leave at 4:00 pm by foregoing his lunch break in order to pick up his son from school.

165.   Plaintiff Mendez was paid $325/week when he started.  This was raised to $375/week in 2012, $400/week in 2014, and $475/week in 2016.

166.   After February of 2017, he was paid at a weekly rate of $12.50/hour.

167.   Plaintiff Mendez regularly worked in excess of forty (40) hours a week but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

168.   Regardless of whether Plaintiff Mendez worked in excess of forty (40) hours or not, Plaintiff Mendez's weekly wages did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

169.   Plaintiff Mendez was also promised a commission of 1% based on the value of the goods he sold.

170.   Plaintiff Mendez sold on average at least $230,000 worth of goods per month and sold as much as $255,000 in a single month.

171.    Plaintiff Mendez only received around $2350 per month in commission, which was then subject to deductions by Defendants for events outside his control.

172.    For example, Defendants routinely deducted $15,000~$20,000 off of his sales amounts for damaged or returned parts, which would translate to at least a $150~$200 deduction from his commissions.

173.    In another instance, Defendants deducted from Plaintiff Mendez $1,100 for a customer disputing a credit card payment made after the parts had been delivered.

174.    Defendants have thus failed to pay Plaintiff Mendez the commission that was promised to him.

175.    As a result of these deductions, Plaintiff Mendez's weekly wages were further reduced, rendering his hourly rate of pay to be below the minimum wage.

176.    Plaintiff Mendez, as a current employee of Defendants, has also been subject – and is still subject – to retaliatory actions by Defendants.

177.    On February 4, 2019, Plaintiffs' counsel sent Defendants' counsel a letter demanding unpaid minimum wages and overtime on behalf of the Plaintiff.

178.    On February 5, 2019, Defendants reduced Plaintiff Mendez's hours by un-scheduling him on Saturdays so that he would only work forty (40) hours a week.

179.    On the same day, Defendant Reddy informed Plaintiff Mendez that he was required to take his lunch break during the work day and could no longer leave early to pick up his son as he had been doing for several years.

180.    On February 6, 2019, Defendant Reddy informed Plaintiff Mendez that he could no longer use his personal phone at work, or he would be sent home.

181.    Plaintiff Mendez had been using his personal phone for business for a long time and many

customers only contact him through his personal phone.

182.    Because Plaintiff Mendez could no longer use his personal phone for business, he missed over 200 calls in a single day from customers and his sales declined.  This in turn has negatively impacted his commissions, which are based on his sales.

183.    When Plaintiff Mendez asked if he could at least use his personal phone for emergencies involving his child, Defendant Reddy replied that he did not care about any emergency Plaintiff Mendez may have involving his child and walked away.

184.    On February 7, 2019, Plaintiff Mendez had his phone merely charging on his desk, and not in use.  Defendants Inder Bian and Shanthan Reddy saw that his phone was out.  Defendant Inder Bian whispered something to Defendant Shanthan Reddy whereupon Defendant Shanthan Reddy told Plaintiff Mendez he could not have his phone out.

185.    Plaintiff Mendez told him he was simply charging the phone and was not using it and also that his son was sick.  Defendant Inder Bian then said that he did not care.

186.    Defendants also took away Plaintiff Mendez's ability to monitor his daily sales.  As a result, he is no longer able to check to see if his commissions are even roughly accurate.

187.    Additionally, he has noticed that non-salespersons are getting credit for some of the sales he makes, and that other peoples' names are appearing on the invoices for sales he has made. Because he cannot monitor his daily sales any longer, he has no idea if he is being credited for these sales.

188.    On February 11, 2019, Plaintiff Mendez was approached by Defendant Reddy and presented with a sheet of his hours to confirm his time.  This was the first time Defendants had ever required such a check.

189.    On this sheet, it was revealed that Defendants had reduced Plaintiff Mendez's pay rate from

$12.50/hour to $11.50/hour.

190.    When Plaintiff Mendez confronted Defendants about this decrease in pay, they asked him why he had joined an imminent lawsuit against them, and that he could have come talked to them to resolve any issues he had with his pay.

191.    Plaintiff Mendez explained his motivations and ended the conversation by saying they had to fix his pay, which Defendants ultimately did.

192.    However, on February 25, 2019, Defendants implemented yet a new change to the office by requiring employees to sign for their hours.  When Plaintiff Mendez looked over his paperwork, it showed that his wages had been reduced from $12.50/hour to $11.50/hour again.

193.    Plaintiff Mendez protested again, and Defendants said his wages were reduced because he did not complete forty (40) hours for the week; Plaintiff Mendez had missed three days of work because his son was sick.  He insisted they fix his pay, which Defendants eventually did.

194.    Following the transmittal of the demand letter sent on February 4, 2019, Plaintiff Mendez has also been subject to delayed commission payments.

195.    In all the years Plaintiff Mendez has worked for Defendants, he has always received his commission payment on the 15th of the month, or at most one or two days late – usually because the 15th landed on a weekend or holiday.

196.    Following the transmittal of the demand letter, Plaintiff Mendez did not receive his commission payment until nearly a week later on February 21, 2019.  A driver who is not involved in the lawsuit, however, received his commission on February 15, 2019.

197.    Plaintiff Mendez also learned that Defendants required another employee to make Plaintiff Mendez's life difficult by forcing Plaintiff Mendez to sell parts at higher prices.  These prices are non-competitive, and as a result, Plaintiff Mendez's sales and commission have been negatively

impacted.

198.   On March 11, 2019, Defendants yet again attempted to lower Plaintiff Mendez's wages, this time by $0.25.

199.   Plaintiff Mendez raised this issue with Defendants, who once again said they would fix the problem.

200.   Plaintiff has been unable to confirm whether Defendants have corrected his wage payments because they made it impossible for him to access the online system setting forth his paystub.

201.   The actions Defendants have directed against Plaintiff Mendez are intended to make his working environment unbearable and to reduce his ability to make sales and thereby commission.

202.   These actions were all conducted after a demand letter was sent to Defendants' counsel by Plaintiffs' counsel, seeking unpaid wages pursuant to the FLSA.

203.   Defendants actions toward Plaintiff Mendez following February 4, 2019, are intended to retaliate against his participation in a lawsuit and his demand for unpaid wages, overtime and commissions lawfully owed to him.

204.   Defendants are not taking similar actions against other workers who have not demanded their unpaid wages pursuant to the FLSA.

205.   Defendants actions toward Plaintiff Mendez are therefore done for the purposes of chilling and deterring his pursuit of his lawful rights and entitlements under the FLSA and forcing Plaintiff Mendez to accept substandard and discriminatory employment conditions, because Plaintiff sought unpaid wages pursuant to the FLSA.

<u>Roberto Valladares</u>

206.   Plaintiff Valladares was employed as a driver for Defendants from September 2011 to December 2017.

207.    Plaintiff Valladares had no stated schedule, but his hours often ran from 8:00 am to 7:00 pm Monday through Saturday.

208.    Plaintiff Valladares worked at a weekly rate of $450/week.

209.    Plaintiff Valladares regularly worked in excess of forty (40) hours a week but was never paid any overtime at a rate of 1 ½ times his regular rate of pay, for all hours of work over 40 hours in a single workweek.

210.    Because Plaintiff Valladares routinely worked in excess of forty (40) hours per work week, Plaintiff Valladares' weekly wages of $450/week did not equate to an hourly rate of pay meeting or exceeding the minimum wage.

211.    Plaintiff Valladares was also promised a commission of 0.5% based on the value of the goods he delivered.

212.    Plaintiff Valladares delivered on average at least $75,000 worth of goods per month.

213.    Plaintiff Valladares only received around $120 to $200 per month in commission.

214.    Additionally, Plaintiff Valladares was subject to deductions by Defendants for things outside his control.

215.    For example, Defendants repeatedly deducted approximately $150 per month from Plaintiff Valladares' commissions for lost items, bringing back defective parts, items being in the wrong box or having the wrong sticker, or if he returned with insufficient money when the customer didn't pay enough.

216.    Defendants have thus failed to pay Plaintiff Valladares the commission that was promised to him.

217.    As a result of these deductions, and the failure to pay commissions earned, Plaintiff Valladares' weekly wages were further reduced, rendering his hourly rate of pay to be below the

minimum wage.

## General Allegations

218.    Defendants have violated the FLSA, the MWHL, and MWPCL insofar as they:

(a)    Failed to properly pay each Plaintiff overtime wages after having worked over forty hours per statutory week, at a rate no less than one and a half (1 ½) times each Plaintiff's respective regular rate of pay;

(b)    During certain periods of time, but particularly before February 2018, failed to properly pay a weekly wage plus commission that equal or exceeded the minimum wage mandated by the MWHL to the Plaintiffs;

(c)    Failed to properly pay Plaintiffs Ayala and Argueta any commission at all for their final week of pay, thereby contributing to violations of the minimum wage provisions of the FLSA and MWHL;

(e)    Refused and failed to ensure that Plaintiffs were paid commissions in the proper amounts promised and at proper times;

(f)    Violated the MWPCL by failing to pay minimum wages, overtime wages, and commission wages owed to Plaintiffs; and

(g)    Retaliated against Plaintiff Mendez by suddenly changing numerous office policies with the intention of chilling Plaintiff's statutory right to seek unpaid wages under the FLSA, and these actions (and inactions) have negatively impacted Plaintiff Mendez's wages and commissions, in violation of the FLSA.

## Causes of Action

### COUNT I
### (FLSA - Failure to Properly Pay Overtime)
### (All Plaintiffs v. All Defendants)

219.   Plaintiffs incorporate paragraphs 1-218, as set forth above, and state, in addition, that Defendants' actions complained of herein constitute a violation of Section 207 of the FLSA, because Defendants willfully failed to pay Plaintiffs overtime compensation for all times that they worked in excess of forty (40) hours per week, and willfully failed to pay overtime compensation at a wage rate of at least one and a half (1 ½) times the Plaintiffs' applicable regular rate of pay.

220.   As a result of Defendants' actions complained of herein, Plaintiffs have failed to receive the overtime pay due to them, as required by Section 207 of the FLSA, 29 U.S.C. § 207.

### COUNT II
### (MWHL - Failure to Pay Minimum Wage)
### (All Plaintiffs v. All Defendants)

221.   Plaintiffs incorporate paragraphs 1-220 as set forth above, and states that Defendants' actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-413 (minimum wage), because Defendants have, at all material times, failed to pay Plaintiffs the proper minimum wage rate for all hours worked, free and clear and in a timely manner.

222.   As a result, Defendants owe Plaintiffs whose regular rate of pay was less the applicable minimum wage under the MWHL in a statutory workweek, the difference between what was received on an hourly basis and the then applicable minimum wage, as required by Maryland law and applicable Maryland regulations.

### COUNT III
### (MWHL - Failure to Properly Pay Overtime)
### (All Plaintiffs v. All Defendants)

223.   Plaintiffs incorporate paragraphs 1-222 as set forth above, and states that Defendants'

actions complained of herein constitute a violation of Md. Ann. Code LE Art. § 3-415 (overtime) because Defendants have, at all material times, failed and otherwise refused to compensate Plaintiffs for all hours worked in excess of forty hours a work week at a rate of not less than one and a half (1 ½) times their regular rate of pay, as required under Md. Ann. Code LE Art. § 3-420.

224.     As a result, Defendants owe Plaintiffs overtime wages in the amount of one and a half (1 ½) times their respective regular rates of pay, for all work weeks they worked in excess of forty hours per week.

<u>**COUNT IV**</u>
**(MWPCL Act – Unpaid Wages)**
**(All Plaintiffs v. All Defendants)**

225.     Plaintiffs incorporate paragraphs 1-224 as set forth above, and state that the actions of Defendants, in failing to pay minimum wages, overtime wages, and commission wages when earned, including payment in proper amounts, are all separate violations of the MWPCL, Md. LE Art. § 3-502(a)(ii) and § 3-505(a).

226.     That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay minimum wages and overtime wages as applicable under the MWHL.

227.     That impliedly, by operation of law, Plaintiffs were entitled to be paid statutory minimum wages and overtime wages by Defendants which have gone unpaid.

228.     Additionally, Defendants deprived Plaintiffs Ayala and Argueta of their final commission payment, due at the separation of employment, and have otherwise cheated and defrauded the Plaintiffs of their commissions by engaging in a deliberate scheme to underreport and miscalculate the amount of commissions owed to each Plaintiff.  If commissions were properly calculated and paid, they would be included in the Plaintiff's regular rate of pay for purposes of overtime and

minimum wage compliance.

229.   That there are no bona fide disputes between the parties as to the right of the Plaintiffs to receive minimum wages, overtime wages or commission wages due.  Defendants knew, or should have known, that it is a covered entity under the MWHL, and that Plaintiffs performed work as employees for which they were not properly compensated.  Defendants further knew that Plaintiff Ayala and Argueta had not received their final commission wages, and that their calculations of commissions deprived the Plaintiffs of earned wages.

230.   Plaintiffs are thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages, i.e. the MWHL-mandated minimum wages and overtime wages, along with commission wages, that have gone unpaid.

### COUNT V
### (FLSA – Retaliation)
### (Plaintiff Mendez v. All Defendants)

231.   Plaintiffs incorporate paragraphs 1-230 as set forth above, and state that the actions of Defendants, constitute both unlawful retaliatory acts and retaliatory harassment against Plaintiff, as a result of Plaintiff Mendez seeking his unpaid overtime wages, insofar as Defendants have created a hostile work environment towards Plaintiff Mendez, and this has not only caused harm to the ability of Plaintiff Mendez to make sales and earn commissions, but it has caused Plaintiff Mendez to incur emotional distress damages due to fear, tress, embarrassment, humiliation, and loss of enjoyment of life.

232.   These actions constitute discrimination against an employee filing a complaint or instituting a proceeding under or related to the FLSA.

233.   Defendants actions are intended to chill and deter Plaintiff Mendez from pursuing his lawful rights and entitlements under the FLSA and to force Plaintiff Mendez to accept substandard

employment conditions, and are thus all separate violations of 29 U.S.C. § 215 (retaliation).

234.    Plaintiff Mendez is thus entitled under 29 U.S.C. § 216 to lost wages, emotional distress damages, liquidated damages, punitive damages, and injunctive relief.

## **Prayer**

Based on the foregoing allegations, Plaintiffs respectfully request that this Court enter Judgment to include money damages and equitable relief, in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a)    Order Defendants to pay Plaintiffs, all unpaid minimum wage payments and overtime premiums determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL

(b)    Order Defendants to pay a sum of liquidated damages in an amount equal to the amount of any unpaid overtime premiums awarded to Plaintiffs, pursuant to the FLSA;

(c)    Order Defendants to pay a sum of liquidated damages in an amount equal to the amount of any unpaid minimum wage payments awarded to Plaintiffs, pursuant to the MWHL;

(d)    Order Defendants to pay the Plaintiffs an amount equal to triple the amount of unpaid minimum wages, overtime wages, and commission wages owed Plaintiffs, under the MWHL, after an accounting has been performed, as Plaintiffs are entitled to such damages under MWPCL;

(e)    Issuing an affirmative injunction ordering Defendants to cease retaliatory actions against the Plaintiff, to include, failing to pay wages on a timely basis and the

discriminatory enforcement of work rules;

(f)     Order Defendants to pay Plaintiff Mendez all lost wages as a result of any retaliatory actions or policies undertaken after February 4, 2019 against Plaintiff Mendez as determined by the Court to be due and owing, under the FLSA, as well as a sum of liquidated damages in an amount equal to the amount of any lost wages awarded to Plaintiff, pursuant to the FLSA;

(g)     Order Defendants to pay Plaintiff Mendez an amount of punitive damages, to be determined by a jury;

(h)     Award Plaintiffs their attorneys' fees and costs in pursuing this action;

(i)     Award Plaintiffs interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(j)     Grant Plaintiff Remberto Argueta equitable relief from the statute of limitations, as a result of Defendants deliberate failure to disclose Plaintiff Remberto Argueta as a putative opt-in Plaintiff in *Dominguez et al. v. Microfit Auto Parts, Inc.*, CBD 18-534 (ECF Doc. 24)

(k)     Grant Plaintiffs any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq. (#25965)

*/s/ Jordan S. Liew*
Jordan S. Liew, Esq. (#20509)

Hoffman Employment Law, LLC
600 Jefferson Plaza, Suite 204
Rockville, MD 20852
(301) 251-3752
(301) 251-3753 (fax)

*Attorneys for Plaintiffs*

**<u>Jury Demand</u>**

The Plaintiffs, by their attorneys, hereby demands a jury trial as to all issues triable by a jury.

*<u>/s/ Howard B. Hoffman</u>*
Howard B. Hoffman
