**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| Jose Hernandez, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. TDC 19-0984 (Lead Case) |
| | ) | |
| Microfit Auto Parts, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATIONS RELATED TO JOINT MOTION TO APPROVE SETTLMENT AGEEMENT AND JOINT MOTION TO WITHDRAW ACCEPTANCES OF OFFERS OF JUDGMENT

This "Report and Recommendations" addresses the "Joint Motion to Approve FLSA Settlement" (ECF No. 85)("Joint Settlement Motion"). The Joint Settlement Motion was filed by Defendants Microfit Auto Parts, Inc., Inder Bian, Kamiljit Bian, and Shanthan Reddy ("Defendants"), and eight Plaintiffs, namely: Alfredo Serra Andujar, Remberto "Wilson" Argueta, Oscar Flores, Jeffrey Gochez, Marvin Marquez, Luis A. Mendez-Payes, Oscar Esquivel Rivera, and Roberto Valladares ("Settlement Plaintiffs").[1] This Report and Recommendations also addresses the "Joint Motion to Withdraw Acceptances of Offers of Judgment" (ECF No. 86)("Withdrawal Motion"), filed by Defendants and six of the Settlement Plaintiffs, namely: Alfredo Serra Andujar, Oscar Flores, Jeffrey Gochez, Luis A. Mendez-Payes, Oscar Esquivel Rivera, and Roberto Valladares.[2]

Pursuant to 28 U.S.C. § 636, and Local Rule 301.5(b), the Honorable Theodore D. Chuang referred these motions to me to issue a report and make recommendations. (ECF No. 87).  I believe

---

[1] Before the district judge consolidated the cases, there were two civil actions: Case Nos. TDC 19-984 and TDC 19-997. Assuming that this settlement agreement is approved, seven plaintiffs will remain in this litigation.

[2] The undersigned will refer to these six Plaintiffs as "Withdrawal Plaintiffs," when necessary.

that the issues have been fully briefed, and do not believe that a hearing is necessary. *See* Local Rule 105.6. As particularized more fully below, I recommend that the Court approve the settlement as a fair and reasonable resolution of *bona fide* disputes, and direct the Clerk of the Court to enter judgment in the amount of relief requested, namely $237,787.85 to the Settlement Plaintiffs and $93,500 in attorney's fees and costs. Relatedly, I recommend that the Court grant the Withdrawal Motion.

## BACKGROUND

On April 1, 2019, seven of the Settlement Plaintiffs[3] filed a Complaint ("First Complaint") related to unpaid wages and commissions. The Complaint alleged violations of: (1) the overtime wage provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq.*; (2) the minimum wage and overtime provisions of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Employment Article §3-401 *et. seq.*; and (3) the minimum wage, overtime wage, and commissions provisions Maryland Wage Payment & Collection Law("MWPCL"), Md. Code Ann., Labor & Employment Article §3-501 *et. seq.* In addition, one of the Settlement Plaintiffs alleged that Defendants retaliated against him for trying to exercise his FLSA rights. (ECF No. 1, Civ. No. TDC 19-984). On April 2, 2019, one of the Settlement Plaintiffs, Alfredo Serra Anjudar, filed a Complaint ("Second Complaint") related to unpaid wages and commissions, alleging violations of the FLSA, MWHL and MWCPL. He also alleged that Defendants retaliated against him for trying to exercise his FLSA rights. (ECF No. 1, Civ. No. TDC 19-997). On May 24, 2019, Defendants filed their Answers in the cases, (ECF Nos. 13, 15, Civ Nos. TDC 19-997, TDC 19-984, respectively), which were later consolidated by Judge Chuang. (ECF No. 23). In July 2019, the Defendants filed Amended Answers. (ECF Nos. 24, 25).

---

[3] Remberto "Wilson" Argueta, Oscar Flores, Jeffrey Gochez, Marvin Marquez, Luis A. Mendez-Payes, Oscar Esquivel Rivera, and Roberto Valladares.

Thereafter, discovery commenced and continued throughout 2019, 2020, and into 2021. During that time, several mediation sessions were held, which were unsuccessful.  In October 2020, pursuant to Fed. R. Civ. P. 68, Defendants made Offers of Judgment to the six Withdrawal Plaintiffs, which were accepted. (ECF Nos. 54-59).

Subsequently, on January 22, 2021, the parties notified the court a settlement had been reached as to eight people, the Settlement Plaintiffs. The Settlement Plaintiffs and Defendants filed the Joint Settlement Motion. In addition, on that same date, six of the Settlement Plaintiffs (i.e., the Withdrawal Plaintiffs) filed a Withdrawal Motion, seeking to withdraw their acceptance of the Rule 68 Offers of Judgment, opting instead to resolve their claims via a settlement agreement.  On or about January 22, 2021, Defendants and Settlement Plaintiffs consented to having the undersigned review the Joint Settlement Motion and Withdrawal Motion. (*See* ECF Nos. 84-86).

The arguments made in support of the Withdrawal Motion are the arguments articulated in the Joint Settlement Motion. (ECF No. 86, ¶ 11). Attached to the Joint Settlement Motion are the settlement agreement and supporting documentation. (ECF No. 85-2) ("Settlement Agreement"); (ECF Nos. 85-1, 85-3) ("supporting documentation").  The parties have reached an agreement whereby the Defendants do not admit liability; rather, they and the Settlement Plaintiffs agree to resolve this matter in order to end the litigation. (Settlement Agreement, p. 1).  The Settlement Agreement provides that, upon court approval, Defendants will pay the Settlement Plaintiffs $237,787.35 to settle all claims asserted in the First and Second Complaints.  The settlement amount figure of $237,787.35 is further broken down as follows for each Settlement Plaintiff:

      a.    Alfredo Serra Andujar claims entitlement to $7,986.06 in wage and hour damages and $4,462.48 in commission damages.  Per the settlement agreement, he will receive $26,770.73, which represents roughly 2.1 times his unpaid wages, as well as an amount for alleged retaliation damages. The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages and retaliation damages.

b.   Remberto "Wilson" Argueta claims entitlement to $31,883.00 in wage and hour damages and $3,864.33 in commission damages.  Per the settlement agreement, he will receive $66,954.30, which represents roughly 2.1 times his unpaid wage and hour damages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

c.   Oscar Flores claimed that he is owed $6,035.35 in wage and hour damages and $3,720.43 in commission damages.  Per the settlement agreement, he will receive $12,674.24, which represents roughly 2.1 times his unpaid wage and hour damages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

d.   Jeffrey Gochez claimed that he is owed $4,494.19 in wage and hour damages and $1,720.93 in commission damages.  Per the settlement agreement, he will receive $9,437.80, which represents roughly 2.1 times his unpaid wages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

e.   Marvin Marquez claims entitlement to $4,497.88 in wage and hour damages and $5,392.48 in commission damages.  Per the settlement agreement, he will receive $9,445.55, which represents roughly 2.1 times his unpaid wages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

f.   Luis A. Mendez-Payes claims entitlement to $22,804.84 in wage and hour damages and $36,923.74 in commission damages.  Per the settlement agreement, he will receive $57,890.16, which represents roughly 2.1 times his unpaid wages, as well as alleged retaliation damages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages and retaliation damages.

g.   Oscar Esquivel Rivera claims that he is owed $8,494.06 in wage and hour Per the settlement agreement, he will receive $17,837.53, which represents roughly 2.1 times his unpaid wages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

h.   Roberto C. Valladares claims that he is owed $17,512.88 in wage and hour damages and $1,177.20 in commission damages.  Per the settlement agreement, he will receive $36,777.05, which represents roughly 2.1 times his unpaid wages.  The settlement compensates him for unpaid wages and commissions, plus alleged liquidated damages.

(Settlement Agreement, pp. 1-2; Joint Settlement Motion, pp. 5, 8-11).  The Settlement Agreement also requires Defendants to pay $93,500 for attorneys' fees and costs, which includes amounts

associated with the preparation of the Settlement Agreement, Joint Settlement Motion, and Withdrawal Motion. (Settlement Agreement, p. 2).   Moreover, the Defendants and Settlement Plaintiffs agree to the following terms, which are especially relevant to the undersigned's evaluation of the Settlement Agreement: (1) a full release of all claims against Defendants; (2) within 30 days following court approval of the Settlement Agreement, Defendants shall pay $237,787.35 to the Settlement Plaintiffs; (2) Defendants are to make a $93,500 payment for attorney's fees and costs; (3) the district court shall keep continuing jurisdiction over the matter for an unspecified period of time to ensure that all terms of the Settlement Agreement are fulfilled and to allow for the resolution of any potential disputes related thereto;[4] and (4) within 15 days following the last payment by Defendants, the parties would filed a joint stipulation of dismissal, asking the district court to dismiss the Settlement Plaintiffs' claims with prejudice. (Settlement Agreement, ¶¶ 2, 4, 15).

## DISCUSSION

Although the Fourth Circuit has not explicitly addressed the factors to be analyzed when deciding a motion to approve an FLSA-related settlement agreement, courts in this District usually analyze the factors articulated in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).  *See Duprey v. Scotts Co.*, 30 F. Supp 3d 404, 407 (D. Md. 2014); *Saman v. LBDP, Inc.*, Civ. No. DKC 12-1083, 2013 WL 2949047, at *1 (D. Md. June 13, 2013); *see also Gionfriddo v. Jason Zink, LLC*, Civ. No. RDB-09-1733, 2012 WL 1077765, at *2 (D. Md. Mar. 29, 2012).

When reviewing a settlement agreement, courts engage in a two-step process. First, a court determines whether the settlement is a "fair and reasonable resolution of a *bona fide* dispute over

---

[4] On April 2, 2021, the undersigned held a telephonic hearing with the parties to clarify a few terms of the settlement reached.  Regarding the request that the Court maintain continuing jurisdiction, the parties represented that they expect all payments to be made within 30 days following court approval of the settlement. Thus, they request that continuing jurisdiction over this matter would be limited to a short period of time, i.e., approximately 60 days.

[any] FLSA provisions." *Lynn's Food Stores v. U.S.*, 679 F.2d at 1355. The bona fides of a dispute are established by several factors: 1) the description of the dispute; 2) the description of the employer's rationale for disputing the employee's sought wages; 3) the description of the employee's justifications for being entitled to disputed wages; 4) the estimates of hours worked and applicable wages; and 5) confirmation that the employee was not a subcontractor. *See Saman*, 2013 WL 2949047, at *3 (first citing *Dees v. Hydrady, Inc.*, 706 F. Supp. 2d 1227, 1241–42 (M.D. Fla. 2010)(then citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, Civ No. 08-1310, 2009 WL 3094955, at *10, 16 (E.D. Va. Sept. 28, 2009)). Second, a court reviews the terms of a settlement, assessing it for fairness and reasonableness. As part of the "fair and reasonableness" analysis, there are several factors that courts routinely examine, including: (1) the extent of discovery; (2) the stage of the proceedings, including the complexity, expense, and foreseeable duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who represented the plaintiff; (5) the opinions of counsel; (6) the probability of the plaintiff's success on the merits; and (7) the difference between the settlement amount and the potential recovery. *See Saman*, 2013 WL 2949047, at *3.

In addition, where, as here, a settlement agreement includes a term related to payment of attorney's fees and costs, a court must "independently assess" for reasonableness. *Hackett v. ADF Restaurant Invs.*, 259 F. Supp. 3d 360, 367 (D. Md. 2016).

### A. Bona Fide Dispute

I have examined the First and Second Complaints, as well as the representations made by counsel in the Joint Settlement Motion and the Withdrawal Motion. I have analyzed the *Lynn's Food-Saman* factors related to the existence of a *bona fide* dispute. The parties first aver that a

*bona fide* dispute exists as to liability.  I agree that there are genuine, *bona fide* disputes as to Defendants' liability for the wage and retaliation claims.

Specifically, Settlement Plaintiffs assert that they were not paid the full minimum wages or overtime wages due for all of the work performed, nor were they paid the full value of their commissions.  Defendants deny that they violated federal law and Maryland law, asserting that the records that they produced demonstrated that Settlement Plaintiffs worked fewer hours than they claimed.  Defendants produced time records, GPS records for the vehicles driven by employees, and sales and delivery records ("relevant records"), which they claim refuted the claims of underpayment.  Settlement Plaintiffs secured an expert who analyzed those records; this analysis, combined with Settlement Plaintiffs' testimony allegedly counters Defendants' denials of liability. Regarding, the retaliation claims, both Andujar and Mendez-Payes complain of adverse treatment following demand letters sent by their attorney, including reduction in hours, monetary deductions from wages or reduction in hourly wage rate used to calculate their wages. Defendants deny these retaliation claims.  In sum, a *bona fide* dispute exists as to Defendants' liability for wage, overtime, and commissions payments under the FLSA, as well as regarding Defendants' liability for retaliation claims under the FLSA.

**B.  Fairness and Reasonableness**

1.  <u>Settlement Agreement Generally</u>

I have reviewed the parties' submissions.  As part of the second step in analyzing the settlement agreement executed, I have considered all of the relevant *Saman* factors.  I find that the Settlement Agreement appears to be a fair and reasonable compromise of the *bona fide* disputes that exist.

The parties engaged in significant discovery, with both parties having ample opportunity to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *11. In addition, the parties engaged in settlement discussions and attended three mediation sessions.  Moreover, there is no evidence that fraud or collusion is present, and the Settlement Plaintiffs are represented by counsel with extensive experience in handling such matters. (Joint Settlement Motion, pp. 4,6, 7, 15-16; ECF No. 85-4).

Comparing the settlement amounts and with the amounts listed in the Offers of Judgment previously accepted by the six Withdrawal Plaintiffs, the amounts are identical.  Thus, the Withdrawal Plaintiffs are not asked to take lesser amounts by entering into the Settlement Agreement.  Next, regarding the relationship between the Settlement Agreement amounts and the potential recovery for the Settlement Plaintiffs had they proceeded to trial, the Settlement Agreement amounts appear to be fair and reasonable.  The Settlement Plaintiffs are to receive amounts to compensate them for unpaid wages and commissions (if applicable), plus liquidated damages and retaliation damages (where applicable).  The settlement amounts are calculated at more than 2 times the wage and hour damages' estimates, plus, where it applies, amounts for retaliation damages.  Thus, the Settlement Plaintiffs will recover what they claim was owed to them, plus a liquidated damages amount. Because the parties disagree on the accuracy of the relevant records, a jury who credited Defendants' version of the facts could have awarded an amount less than what Settlement Plaintiffs will receive.  Similarly, a jury who credited the Settlement Plaintiffs' version of the facts could have awarded a higher amount in damages. (*See*

ECF No. 85-3).  In sum, in light of the risks that both parties would face were they to proceed to trial, this agreement appears to fairly and reasonably resolve the Settlement Plaintiffs' claims.

      2.  <u>Continuing Jurisdiction</u>

Regarding Paragraph 15 of the Settlement Agreement, I find that it is reasonable for the district court to retain jurisdiction over the part of this case related to the Settlement Plaintiffs and Defendants, for a period not to exceed 75 days after issuance of this Report and Recommendations approving of the Settlement Agreement.  Thereafter, this part of the case related to the Settlement Plaintiffs and Defendants is dismissed with prejudice.  I make this recommendation for three reasons.

First, the parties have represented in the Joint Settlement Motion and during an April 2, 2021 telephone conference with the undersigned that the settlement payments are to be made within approximately 30 days following court approval of their Settlement Agreement.  Thus, per the Settlement Agreement, they would file a joint stipulation for dismissal within 15 days after receiving final payment, dismissing the case with prejudice. In other words, roughly 45 days after the date that the settlement is approved, they would seek a dismissal with prejudice.  It is not uncommon in this district for courts to issue dismissals without prejudice under Local Rule 111, allowing the parties 30-60 days to reopen a closed matter for good cause.  Therefore, keeping this matter open for 75 days from today's date allows for sufficient time following the issuance of this Report and Recommendation for any corrections,[5] plus time for confirmation that all payments (damages and attorney's fees/costs) have been made. Thereafter, the dismissal would be with prejudice.  Second, there are still seven non-settling Plaintiffs in this litigation, who currently have a trial date scheduled for March, 2022. (ECF No. 80).  Accordingly, keeping the case related to

---

[5] Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b), the parties have 14 days to object to this Report and Recommendations. I do not find that likely, given that this is a joint motion.

the Settlement Plaintiffs and Defendants for an additional 75 days does not force this district court to keep open a matter that would otherwise be closed.  Third, with the consent of the parties, the district court can always refer any disputes regarding the settlement agreement to a U.S. Magistrate Judge for resolution.  In sum, I respectfully recommend that the district court retain jurisdiction over that part of the case as it relates to the Settlement Plaintiffs and Defendants for a period not to exceed 75 days following the issuance of this Report and Recommendations.

### C.  Attorney's Fees and Costs

Finally, the amount of attorney's fees and costs sought must be "independently assessed" for reasonableness. *Hackett*, *supra*, 259 F.Supp.3d at 367; *Kianpour v. Restaurant Zone, Inc.*, Civ. No. DKC 11-802, 2011 WL 5375082, *3 (D. Md. Nov. 4, 2011).  I find that the Settlement Agreement separately provides for payment of attorney's fees and costs, and reflects that these amounts were negotiated separately, and "only after a resolution was reached with respect to the Settle[ment] Plaintiffs' settlement outcomes." (Joint Settlement Motion, p. 16).

Next, this Court applied the traditional lodestar methodology factors: multiplying the number of hours reasonably expended times a reasonable hourly rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).  This Court also analyzed the specific facts of this case and assessed the so-called *Johnson* factors[6] to determine the reasonableness of the hours and the rate sought.  The Court reviewed the Settlement Agreement, which only sought eight-fifteenths (8/15) of the attorney's fees and costs incurred through October 2, 2020 (the date

---

[6] *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  The courts in this Circuit follow *Johnson*. *See, e.g., McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). The factors to consider are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee for like work; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fee awards in similar cases. *Id.*

10

that the Offers of Judgment were made to six of the Settlement Plaintiffs). This amount is reasonable as it is only related to the Settlement Plaintiffs, and is proportional to the amounts to be paid to the Settlement Plaintiffs. *Compare Chapman v. Ourisman Chevrolet Co., Inc.*, Civ. No. AW-08-2545, 2011 WL 2651867, *18 (D. Md. Jul. 1, 2011) (attorney's fees awarded proportional to amounts recovered for two out of fourteen plaintiffs). In addition, I examined the declarations and detailed time records submitted to support the hourly rates and hours sought, as well as the submissions related to costs. (ECF Nos. 85-4 through 85-7). I found them to support the reasonableness of the fees and costs sought. *See Kianpuour*, *supra*, at *3. Accordingly, I recommend that the district court award attorney's fees and costs in the request amount.

## CONCLUSION

In sum, I respectfully recommend that the district court **GRANT AND APPROVE** the "Joint Motion to Approve FLSA Settlement" (ECF No. 85), and **GRANT** the "Joint Motion to Withdraw Acceptances of Offers of Judgment" (ECF No. 86). I further recommend that:

1) The Clerk of the Court enter judgment against Defendants in the amount of **$237,787.85,** payable to the Settlement Plaintiffs, as follows:

   a. Alfredo Serra Andujar: $26,770.73;

   b. Remberto "Wilson" Argueta: $66,954.30;

   c. Oscar Flores: $12,674.24;

   d. Jeffrey Gochez: $9,437.80;

   e. Marvin Marquez: $9,445.55;

   f. Luis A. Mendez-Payes: $57,890.16;

   g. Oscar Esquivel Rivera: $17,837.53;

   h. Roberto C. Valladares: $36,777.05

2) The Clerk of the Court enter judgment against Defendants in the amount of **$93,500**, payable to counsel for the Settlement Plaintiffs, Hoffman Employment Law, LLC;

3) The district court retain continuing jurisdiction over this settlement for a period of time not to exceed 75 days after the date that this Report and Recommendations is filed. Thereafter, the part of the case pertaining to the Settlement Plaintiffs and Defendants shall be dismissed **with prejudice.**

Dated: April 8, 2021                     _____/s/_____
                                          The Honorable Gina L. Simms
                                          United States Magistrate Judge